ROBERT TEMPLE vs. THOMAS HOOKER and R. R. THRALL.

A and B are creditors of C. C being in failing circumstances, discloses to A, who is an attorney, his situation, and his purpose of securing both. He directs A to make a mortgage to B of certain lands, and to attach certain other property for his own security. A makes no objection, but proceeds to make the mortgage and delivers it to C. to be recorded; but proceeds, at an unusual hour, and unknown to C, to attach the lands before the mortgage is recorded. Held, that B's mortgage shall be preferred to A's attachment.

This was a petition to foreclose a mortgage, executed by Hooker to the plaintiff, of certain premises situate in Rutland, and Thrall was made a party defendant, as having become interested in the right of redemption, by the levy of an execu-

tion against Hooker upon the mortgaged premises. The bill was taken as confessed, as to Hooker, who made default, but Thrall appeared and defended, claiming title to the premises to the exclusion of the orator's mortgage, by a prior and better title—that is to say, by virtue of his original attachment against Hooker, which had been placed on record shortly before the plaintiff's mortgage.

RUTLAND,
*January,*
1834

Temple
*vs.*
Hooker et al.

From the evidence in the case it appeared, that Hooker being indebted to the orator in the sum of about eleven hundred dollars, had previous to the 27th of February, 1832, promised the orator to give him security for the debt. That on that day, Hooker finding himself in failing circumstances, applied to Thrall, Temple being absent, and stated to him his pledge to Temple, and requested him to make a note to Temple for eleven hundred dollars, and also a mortgage of the land in question to secure the same; at the same time disclosing to Thrall his situation, and pointing out to him property to a large amount, which he, Hooker, requested Thrall to attach for his own security, he, Thrall, being also a creditor of H. to a very large amount. Thrall made no objection to this arrangement, but proceeded to make the note and mortgage, which Hooker signed and took away; which mortgage was lodged for record early the next morning. In the mean time, after the deed of mortgage had been signed by Hooker, Thrall proceeded to make out writs upon his claims against Hooker, caused the premises in question to be attached, together with the other property designated by Hooker, and the attachments to be left for record about 5 o'clock the succeeding morning, and a short time before the plaintiff's mortgage was left.

It also appeared, that Hooker had large claims against Thrall, which it had been agreed should be set off to the claims of Thrall; but that judgments were taken by him, without making such application, and under an agreement for a future adjustment and application.

The bill prayed not only a foreclosure, but a discovery and an account of the claims subsisting between the respondents, with a view of showing that Thrall's claims had been satisfied exclusively of the levy upon the premises in question.

*Merrill and Ormsbee for plaintiff.*
*Thrall pro se.*

RUTLAND,
*January,*
1834.

Temple
*vs.*
Hooker et al.

The opinion of the court was pronounced by

PHELPS, J.—The argument which has been bestowed upon that part of the evidence which relates to the state of the amount between the respondents, seems to have been unnecessary, inasmuch as, if the precise state of the amount become material, the court will not on this occasion examine a prolix account, but will send it to the master for adjustment.

The only question necessary to be discussed here is, whether, as between the parties, the mortgage or the attachment shall be preferred. We entertain some doubt, whether the application to Thrall to make the securities is not to be considered as of a professional character. It is certainly true, that resort is had to gentlemen of the legal profession for executing conveyances, simply with a view to their professional skill; and in many instances the parties regard them, not so much in the light of scrivenors, as in that of legal advisers. Such transactions often require professional confidence, and where they do so, if the employment is to be deemed professional in its character, a breach of that confidence is a breach of professional duty. It certainly must be conceded, that no member of the bar would be permitted to derive advantage from betraying the confidence of his client.

But without expressing any opinion upon that point, we are all of opinion, that, under the circumstances disclosed by the evidence, the respondent, Thrall, was not at liberty to defeat the plaintiff's mortgage, by interposing his attachment. It appears that Hooker disclosed confidentially to Thrall his obligation to Temple, his embarrassed situation, as well as the arrangement which he contemplated for the security of Temple and himself. It appears that Thrall acquiesced in this arrangement, at least so far as to make the securities, and it is fairly to be inferred, that Hooker understood that Thrall was satisfied. Had Thrall objected to it, or declined to make the securities, Hooker would doubtless have made provision for Temple in some effectual way. As it was, he was, to say the least, thrown off his guard by Thrall's demeanor; and we think it was not consistent with good faith, that Thrall should thus surreptitiously defeat the arrangement.

Decree for the orator.